Filed 5/26/26  Taduran v. James R. Glidewell, Dental Ceramics CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ABRAHAM TADURAN, | |
| Plaintiff and Appellant, | G064718 |
| v. | (Super. Ct. Case No. 30-2017-00934037) |
| JAMES R. GLIDEWELL, DENTAL CERAMICS, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, William D. Claster, Judge. Affirmed.

Stiller Law Firm, Ari J. Stiller, Ariel Still-Shulman, and Haines Law Group, Paul K. Haines, Fletcher W. Schmidt and Andrew Rowbotham, for Plaintiff and Appellant.

Jackson Lewis, Scott C. Lacunza, Kathy A. Le, and Dylan B. Carp, for Defendant and Respondent.

*     *     *

Abraham Taduran sued his former employer James R. Glidewell, Dental Ceramics, Inc. (Glidewell) for various Labor Code violations. The trial court awarded a total of $516,965 in civil penalties for four Labor Code violations, reducing the maximum penalty for several violations on a per employee basis. Taduran contends the trial court was required to reduce penalties for Labor Code violations on a per pay period basis. As discussed below, we conclude the Labor Code does not mandate any particular method for reducing a maximum civil penalty. The trial court did not abuse its discretion in awarding a lesser amount of civil penalties here.

Taduran also sought $1,570,500 in attorney fees as the prevailing party, based on a lodestar of $1.047 million and a multiplier of 1.5. The trial court accepted the lodestar figure, but applied a modifier of 0.70, resulting in an award of $733,440 in attorney fees. Taduran contends the court's reasoning for applying a negative multiplier cannot withstand "heightened scrutiny." We disagree and find no abuse of discretion. As discussed below, the trial court considered the proper factors and reasonably applied a negative multiplier. Accordingly, we affirm.

STATEMENT OF THE CASE

I.

COMPLAINTS AND SUMMARY ADJUDICATIONS

On September 17, 2018, Taduran filed a second amended complaint (SAC), alleging a single cause of action under the Labor Code Private Attorneys General Act of 2024 (PAGA), Labor Code sections 2698 et

2

seq.[1] The SAC alleged Glidewell committed eight categories of Labor Code violations against its employees. It alleged: (1) minimum wage violations, (2) overtime wage violations, (3) rest period violations, (4) meal period violations, (5) separation earnings violations, (6) wage statement violations, (7) biweekly payment violations, and (8) recordkeeping violations.

The parties filed motions for summary adjudication. Taduran sought summary adjudication of the wage statement violations and the overtime wage violations. Glidewell sought summary adjudication that its wage statements complied with the Labor Code.

On July 10, 2020, the trial court granted in part Taduran's summary adjudication motion and denied Glidewell's motion. The court noted that "[nearly all facts relevant to [its] ruling have been stipulated to by the parties." As to overtime wage violations, the court noted that Glidewell conceded nearly all the issues, except for holiday bonus pay, which it argued was discretionary. The court therefore granted summary adjudication on the overtime pay issue, except as to the holiday bonus pay. As to the wage statement issue, the court concluded that in light of Glidewell's concession of the overtime wage issue, the wage statement necessarily did not include all of an employee's wage information. The remaining dispute concerned whether the wage statement included information on an employee's piece-rate pay. Glidewell argued it substantially complied with the Labor Code because it provided the piece-rate information on a separate document, a "Production Sheet." The court rejected the argument that an employer may avoid liability by substantially complying with the Labor Code requirements, but stated

---

[1] All further statutory references are to the Labor Code, unless stated otherwise.

3

that it would consider substantial compliance when "determining appropriate civil penalties under Labor Code [section] 2699(e)(2)."

On December 16, 2021, the parties jointly stipulated to allow Taduran to file a Third Amended Complaint (TAC) to conform to the trial court's rulings on the summary adjudication motions and to other issues. Based on the stipulation, the trial court granted Taduran permission to the file the TAC.

The TAC, the operative complaint in this case, alleged: (1) overtime wage violations, (2) rest period violations, (3) separation earnings violations, (4) wage statements violations, and (5) recordkeeping violations.

## II.

### COURT TRIAL

A. *Joint Stipulations*

On November 17, 2022, the parties informed the court that Glidewell was stipulating to liability on the rest period claim, and they would submit the only remaining issue (the amount of civil penalties for that claim) to the court by way of trial briefs rather than live testimony or presentation of evidence.

On November 28, 2022, the parties submitted a joint stipulation regarding trial procedures and undisputed facts and conclusions for trial. The undisputed facts included, among others, the total number of relevant wage statements, total number of affected employees, total number of pay periods where Glidewell underpaid, and aggregate and average amounts of underpayment per employee for each violation.

B. *Trial Briefs*

On December 20, 2022, Taduran submitted his trial brief. In his brief, Taduran asserted the trial concerned four distinct issues, and it is

undisputed that Glidewell is liable on each issue. Specifically, the trial court already had summarily adjudicated three issues in his favor. It had determined: (1) Glidewell did not include information of piece-rate pay on wage statements from August 4, 2016 through March 1, 2019 (wage statement issue); (2) Glidewell failed to include the value of non-discretionary bonus pay (bonus pay issue); and (3) Glidewell failed to include in overtime pay the value of payments for non-productive time, referred to as "Uptime" by the parties (uptime issue). As to the fourth issue which concerns rest period pay, Glidewell later stipulated to liability (rest period issue). Taduran also claimed that all relevant facts have been stipulated to by parties for the purposes of summary adjudication and trial. Thus, the only remaining trial issue is the amount of civil penalties for the Labor Code violations. Taduran argued the PAGA civil penalties totaled $55,985,350. He acknowledged the trial court has discretion to reduce this number, but argued "the facts here—including Glidewell's failure to pay wages that it admits are owed and its significant delay in rectifying admittedly faulty systems–do not support an overly drastic reduction to the PAGA penalties in light of the deterrent purposes of PAGA." Taduran did not suggest any particular reduction.

In Glidewell's trial brief, it agreed that "[l]iability has been determined" in Taduran's favor on the four remaining Labor Code claims at issue in the lawsuit, and the parties "have stipulated to relevant facts in lieu of presentation of trial evidence and testimony regarding the award of civil penalties. Accordingly, the only remaining issue on the merits of [Taduran's] claims is for the Court to determine the amount of civil penalties to be awarded under PAGA to [Taduran] and the Aggrieved Employees." (Fn. omitted.) Glidewell argued the trial court should award a lesser amount than the maximum statutory penalties based on the facts the violations were

5

"hyper-technical" or "very narrow" so they do not warrant a significant penalty. Glidewell proposed the court award civil penalties of $65 per aggrieved employee on the wage statement issue, for a total award of $100,165. On the rest period issue, it proposed either $0.78 per pay period, for a total of $172,135.86, or $98.91 per aggrieved employee, for a total of $188,819.19. As to the uptime issue, Glidewell proposed either $3.33 per pay period, for a total of $21,941.37, or $6.55 per aggrieved employee, or a total of $29,929.40. As to the bonus pay issue, Glidewell suggested different amounts of penalties for each of the bonus pay, totaling $40,303.89 when calculated per pay period, or $40,300.47, when calculated per aggrieved employee.

In reply, Taduran recognized that the trial court would apply a discretionary reduction to the maximum penalty, but argued "the reduction requested by Glidewell of more than 99[percent] would be tantamount to an outright elimination of the penalty." It argued: "Glidewell's violations led to nearly $85,000 in unpaid wages and were allowed to continue for months even after Glidewell acknowledged liability. These are clear violations of the California Labor Code which PAGA is intended to penalize and deter, and an overly drastic reduction of the civil penalty would frustrate the intent behind the PAGA."

C. *Trial Court's Rulings*

Following the parties' briefing, the trial court awarded a total of $515,955 in civil penalties for the four Labor Code violations. It provided detailed reasoning for its reduction from the maximum penalty.

On the wage statement issue, the court noted that the noncompliant wage statements did not result in any unpaid wages. Moreover, when the incomplete weekly wage statements were supplemented by the Production Sheets that Glidewell provided to its employees, the combination

6

satisfied the purpose of the Labor Code wage statement requirements. Additionally, the maximum penalty of $33,199,250 (based on $250 per pay period) was "enormous" because Glidewell provided weekly rather than bi-weekly pay check. Glidewell also corrected the wage statements beginning on March 1, 2019, which was 16 months before the trial court granted summary adjudication. Based on these circumstances, the trial court concluded "a penalty of $100,165 is appropriate and that any penalty beyond this amount qualifies as 'unjust, arbitrary[, and] oppressive.'"

On the rest period issue, the court explained this issue concerned how Glidewell calculated pay based on fractional rest periods. For example, an employee who took 20 minutes of rest would be credited with 0.33 hours, while an employee who took 40 minutes would be credited with 0.67 hours. Based on rounding, the employee who took 20 minutes of rest would be penalized. Over the relevant five-year period, employees were underpaid an average of $0.26 per pay period, for a total of $63,464 in unpaid wages. The parties agreed the maximum penalty for this violation was $22,068,700. The court applied a discretionary reduction because it concluded Glidewell's method of calculation of rest period wages for piece-rate employees was established and applied in good faith. Other facts supporting reduction include Glidewell's willingness to change the system prior to adjudication, and its apparent willingness to pay the affected employees by March 31, 2023. Based on these circumstances, the court concluded that "a penalty of $190,900 (1,909 employees x $100 per employee) is appropriate."

As to the uptime issue, the court explained the violation occurred because Glidewell paid overtime wages based on the regular hourly pay and does not include uptime pay. Thus, in weeks where the uptime rate is higher than the regular hourly rate, the overtime wages are underpaid. A

7

total of $7,310 in lost wages occurred, translating to $6.55 per employee or $1.11 per pay period. The parties agreed the maximum penalty for this violation is $658,900. The court concluded the relatively minimal amount of unpaid wages and Glidewell's willingness to repay those wages support a reduction. It determined "a penalty of $167,400 or $150 per affected employee serves both the deterrence and punishment function[s] of PAGA."

Finally, as to the bonus pay issue, Glidewell did not include the bonuses in the regular rate calculation. A total of $13,433 in lost wages occurred, and the maximum penalty is $58,500. Although Glidewell suggested a reduction to $40,303, the trial court declined to reduce the penalty and imposed the full $58,500 penalty.

## III.

### ATTORNEY FEE MOTION

On May 30, 2017, Taduran filed a motion for attorney fees and costs. He requested $1,571,658.75 in attorney fees, consisting of a 1.5 multiplier on a lodestar amount of $1,047,772.50, plus $98,138.21 in costs. Taduran argued the 1.5 multiplier was warranted based on the novelty of his legal theory concerning the rest pay issue, counsel's skill and experience, counsel's lost opportunity to work on other matters, and contingency risk.

Glidewell opposed the attorney fee motion, arguing the lodestar amount was excessive and unreasonable given the nature of the claims. It asserted the reasonable lodestar amount is $261,943.13, or 25 percent of the requested amount. It further argued no fee enhancement multiplier was warranted because the two primary claims (wage statement issue and rest period issue) were relatively straightforward from an evidentiary and proof standpoint, and the civil penalty award was well below what Taduran sought in his trial brief.

8

In reply, Taduran argued the lodestar amount was reasonable, noting Glidewell has not identified a single billing entry that it contends is vague, duplicative, excessive or unnecessary. Taduran contingency risk for "a case that has lasted seven years, involving over 1,500 attorney hours and nearly $100,000 in actual out-of-pocket litigations costs."

On July 15, 2024, the trial court awarded Taduran $733,440 in attorney fees and $98,138.21 in costs. The court accepted the lodestar amount, but noted the amount was based on current billing rates for three attorneys even for legal work performed many years before their billing rates increased. Specifically, the court noted that in 2020 in another case, the same attorneys had claimed billing rates of $650, $595, and $425, but for work in this case which began in 2017, Taduran used rates of $850, $750, and $650, respectively. This represented an upward multiplier of 1.3, 1.26, and 1.53 respectively for time billed in 2020. The court noted it would take the billing rates into consideration when setting the final fee amount.

As to the multiplier, the court considered: (1) the relatively straightforward, records-based nature of the claims, (2) the reasonable and expected skill in prosecuting the claims, (3) that the civil penalty award was less than 1 percent of what Taduran sought, and (4) the contingency risk, which "weigh[ed] in favor of an upward multiplier but only slightly given that liability of certain claims was established over four years ago." Based on all these factors, the trial court concluded a 0.70 multiplier was appropriate.

A final judgment awarding $515,965.00 in civil penalties, plus $733,440 in attorney fees and $98,138.21 in litigation costs, was entered on September 13, 2024. Taduran appealed.

DISCUSSION

I.

CIVIL PENALTIES UNDER PAGA

Taduran acknowledges the trial court may reduce the maximum amount of civil penalties under section 2699, subdivision (e)(2), but argues the court was required to apply the reduction on a per pay period basis, not a per employee basis. We review the trial court's reduction of civil penalties under section 2699, subdivision (e)(2) for an abuse of discretion. However, "judicial discretion must be exercised within the confines of the statute that grants the discretion . . . [and] in the context of section 2699, subdivision (e)(2) . . . a court can only exercise its discretion *to award lesser penalties* based on the enumerated considerations." (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1213.) Accordingly, we apply a de novo standard of review to determine the scope of the trial court's authority to reduce civil penalties under section 2699, subdivision (e)(2) before reviewing the trial court's exercise of that authority for an abuse of discretion. (See *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1135 (*Thurman*), disapproved on another point by *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 196, fn. 8 [noting the appellate court would review "the trial court's award of civil penalties in an amount less than the statutory maximum [for] abuse of discretion—i.e., whether the trial court reasonably determined that imposition of the maximum statutory penalty amount would result in an award that is unjust, arbitrary, oppressive, or confiscatory based on the facts and circumstances of this case"].)

Section 2699, subdivision (e)(2) provides: "In any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum

10

civil penalty amount specified by this part, including the penalty amounts in subdivisions (g) and (h), or may, notwithstanding the limitations set forth in subdivisions (g) and (h) exceed the limitations set forth in those subdivisions, if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."

Section 2699, subdivision (a) does not provide a formula for calculating the amount of civil penalty, but section 2699, subdivision (f) provides that civil penalties are computed based on a fixed amount "for each aggrieved employee per pay period." (See, e.g., § 2699, subd. (f)(2)(A) [civil penalty is "One hundred dollars ($100) for each aggrieved employee per pay period"].) Section 2699, subdivisions (g) and (h) limit the civil penalty under certain circumstances to not more than "15 percent of the penalty sought under subdivision (a) or (f)," (§ 2699, subd. (g)(1)), and "30 percent of the penalty sought under subdivision (a) or (f)." (§ 2699, subd. (h)(1).) Thus, under the plain language of the statute, the trial court is not constrained to the civil penalty formula set forth in those statutory provisions.

Taduran argues a reduction must be applied on a per pay period basis because PAGA imposes civil penalties on a per pay period basis. We disagree. Section 2699, subdivision (e)(2) does not provide a formula for reducing the maximum civil penalty; it merely states that the court may award a "lesser amount." The initial step of calculating the maximum civil penalty is set forth in section 2699, subdivision (f), which provides for calculation on a per pay period basis. Section 2699, subdivision (f), however, does not reference reduction of a civil penalty, let alone provide any mandatory formula for reduction. Thus, after calculating the maximum civil penalty on a per pay period basis, the trial court is not precluded from using

11

any reasonable method to reduce that amount, including applying a reduction on a percentage, per pay period or per employee basis.

Taduran argues that only a per pay period method satisfies PAGA's purpose of deterring Labor Code violations because "[a]n employer faced with a per-person award has no incentive to discontinue committing violations because it will be penalized the same whether a violation occurs in one pay period or one thousand pay periods." However, such an employer has no foreknowledge the trial court would apply any particular reduction method, let alone apply any reduction at all. For example, in this case the trial court awarded the full amount of civil penalties, which was calculated on a per pay period basis, on the bonus pay issue. Thus, there remains sufficient deterrence notwithstanding this particular award of civil penalties.

Taduran's reliance on several cases which applied a reduction on a per pay period is misplaced because, as he acknowledges, none of those cases hold that applying a reduction on per employee basis is prohibited. We have reviewed those cases, and they did not address a limitation on the method of applying a reduction under section 2699, subdivision (e)(2). (See *Thurman*, *supra*, 203 Cal.App.4th 1112; *Carrington v. Starbucks Corp.* (2018) 30 Cal.App.5th 504, 517; *Bernstein v. Virgin America, Inc.* (N.D. Cal. 2019) 365 F.Supp.3d 980.) As stated above, a trial court may apply a reduction on a per pay period basis, but that discretionary choice does not preclude other trial courts from applying a reduction on a per employee basis.

Finally, citing *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, disapproved on another point by *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 709, Taduran argues that because civil penalties are subsequently allocated 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees, applying a reduction on

12

a per employee period would be disproportionate and unjust because "[t]hose who worked for Glidewell for the full liability period would have their share diluted and those who worked for a short period would receive a windfall." *Moniz* is factually distinguishable. There, the appellate court concluded the trial court abused its discretion in approving a settlement of a PAGA action involving two class of employees (Associates and Colleagues), wherein, of the 25 percent to the aggrieved employees, "88 percent was allocated to the Associates and 12 percent was allocated to the Colleagues." (*Id.* at p. 68.) Here, there was no allocation of a settlement among classes of aggrieved employees. Rather, there is a single common fund from which all aggrieved employees can be compensated proportionately. In sum, the trial court did not abuse its discretion in calculating a reduction to the maximum civil penalty on a per employee basis.

Aside from the method of reducing the maximum amount of civil penalties, Taduran's only challenge to the trial court's consideration of the various factors and its final determination of the proper amounts of penalties is that the reduction is too drastic, approaching zero percent. But this challenge ignores the factors leading to the reduction and examines only the final result divorced from the facts and circumstances of this case. Moreover, the exact result could still occur if the trial court reduced the penalties on a per pay period basis. Glidewell proposed reductions on both a per pay period basis and a per employee basis, and the reduction can be mathematically calculated to result in the same amount of penalties. Here, the trial court could reasonably determine the amount of civil penalties for the main violations (wage statements and rest period issues) should be drastically

reduced for the reasons stated in its written ruling.[2] There was no abuse of discretion. Accordingly, the award of civil penalties is affirmed.

## II.

### AWARD OF ATTORNEY FEES UNDER PAGA

Section 2699, subdivision (k)(1) provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Here, the parties and the trial court applied the lodestar method to calculate reasonable attorney fees. "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee 'by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.'" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489 (*Laffitte*).) The trial court awarded Taduran the full amount of requested costs, but applied a 0.7 multiplier to the requested lodestar. Taduran challenges the trial court's application of a negative multiplier to the lodestar.

The parties dispute how the trial court's downward adjustment of the lodestar should be reviewed. Generally, "[w]e review attorney fee awards on an abuse of discretion standard. 'The "experienced trial judge is the best

---

[2] For example, specifically as to the wage statements, the trial court noted the employees received all the required wage information, albeit in two separate documents, and no employee lost any wages. As to the rest period issue, the court explained it resulted from a method of rounding minutes to fractional hours that was not determined to be illegal until this litigation and the resulting lost wages were minimal.

14

judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.""" (*Laffitte*, *supra*, 1 Cal.5th 480, 488.) As to the multiplier, "[n]o established criteria calibrate the precise size and direction of the multiplier, thus implying considerable deference to trial court decisionmaking about attorney fee awards." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 745 (*Karton*).)

The dispute concerning appellate review arises from a trial court's "'across-the-board percentage cut,'" such as a negative multiplier to the lodestar. In *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 102, the appellate court applied what it called "'heightened scrutiny'"—a term borrowed from federal cases—to the trial court's application of reduced hourly rates to calculate the lodestar and a subsequent 0.5 multiplier to that lodestar. (See *id.* at pp. 101–102.) The appellate court reversed the attorney fee award, concluding "the reasoning expressed in the court's order does not meet the federal criterion of a clear and specific explanation [of the reduced attorney fees award] sufficient for meaningful appellate review. Indeed, it is not at all evident that the court independently reviewed the parties' submissions before signing the order drafted by defense counsel." (*Id.* at p. 104.) In *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24 (*Warren*), the appellate court applied "heightened scrutiny" to a trial court's application of a 0.33 multiplier. The *Warren* court explained this standard of review means the trial court "must clearly explain its reasons for choosing the *particular* negative multiplier that it chose; otherwise, the reviewing court is unable to determine that the court had valid, specific reasons for its across-the-board percentage reduction." (*Id.* at p. 41.)

The appellate court in *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, however, disagreed with the *Warren* court's holding that "a heightened standard is appropriate for appellate review of fee awards." (*Morris.* at p. 37, fn. 6.) The *Morris* court concluded that under California law, the "'trial court has no sua sponte duty to make specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings to support the trial court's determination.'" (*Ibid.*) Whether to apply heightened scrutiny to across-the-board cuts to fee awards is pending before the California Supreme Court. (See *Cash v. County of Los Angeles* (2025) 111 Cal.App.5th 741, review granted, August 20, 2025, No. S291827.) We need not resolve this dispute because we conclude the trial court here provided specific explanations for its choice of a 0.7 multiplier. We thus review that reasoning to determine whether the court's reduction constituted an abuse of discretion.[3]

The trial court found one factor supported an upward adjustment of the lodestar—the contingency risk. The skill of the attorneys was a neutral factor. However, multiple factors supported a downward adjustment,

---

[3] We reject interpreting "heightened scrutiny" as requiring the trial court to explain why it chose a 0.70 multiplier instead of another multiplier, such as a 0.75 multiplier. There is no legal principle to support such precision in the abuse of discretion standard of review, which contemplates a range of permissible behavior. (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957 ["Under that standard, there is no abuse of discretion requiring reversal if there exists a reasonable or fairly debatable justification under the law for the trial court's decision or, alternatively stated, if that decision falls within the permissible range of options set by the applicable legal criteria"].)

including the complexity of the legal issues, the relative success, and the upward adjusted billing rates "baked" into the lodestar. Based on these factors, the court concluded a 0.7 multiplier was appropriate. Aside from the court's reasoning, we note the same trial judge who awarded the reduced attorney fees has presided over the case from its inception and the court's reasoning did not adopt Glidewell's opposition, which sought a reduction of the lodestar amount and a multiplier of 0.25.

Taduran challenges the consideration of past, usually lower hourly attorney rates to justify a negative multiplier. Citing *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, he argues the reasonableness of the hourly rates should reflect the prevailing market hourly rate, not whether they were higher than several years ago. We disagree. In *PLCM*, the California Supreme Court stated: "The reasonable hourly rate is that prevailing in the community for similar work. [Citations.] The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Id.* at p. 1095.) Thus, the trial court may consider lower past hourly rates to calculate the lodestar figure to "fix the fee at the fair market value" as long as it does not use the same factor to reduce the lodestar amount. (*Ibid.*; Cf. *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 156 (*Graciano*) ["If the court had decided that a lesser hourly rate should apply because of the lack of novelty or complexity of issues, then its reduction would be improperly duplicative, since the court had already considered and declined to apply a positive multiplier for those factors"].) Here, the trial court declined to calculate the "correct" hourly rate for legal work performed in 2020 and before, and instead considered the fact that lower rates were charged during that period in applying a negative multiplier. We find no

17

abuse of discretion in doing so. Generally, the prevailing market rate for legal work performed by an inexperienced associate is lower than that performed by a seasoned partner. Thus, the trial court does not abuse its discretion in determining that current hourly rates do not necessarily reflect the market value for prior work.

Taduran also challenges the relative success factor, arguing the trial court improperly relied on proportionality considerations to reduce the attorney fees. We disagree. "[T]he trial court rightly sought an appropriate relationship between the result achieved and the size of the fee. For a century or more, California courts have considered the success or failure of attorney efforts when evaluating attorney fee requests." (*Karton*, *supra*, 61 Cal.App.5th at p. 746.) Specifically in representative actions to vindicate public rights, such as the PAGA action here, the percentage of recovery can be used to support a negative multiplier. (See *Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 53 (*Lealo*) ["[T]he 'reasonableness' of a fee in a representative action will often require some consideration of the amount to be awarded as a percentage of the class recovery"]; accord, *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 63 [percentage calculation may be used to determine a lodestar multiplier]; see also *Gunther v. Alaska Airlines, Inc.* (2021) 72 Cal.App.5th 334, 358 [noting that "courts have considered the amount of the monetary award in assessing the reasonableness of fees"].) Here, the trial court expressly considered the amount of the monetary award in determining how to adjust the lodestar. (Cf. *Gunther*, *supra*, 72 Cal.App.5th at p. 359 [in that case, "[t]he trial court did not place significant reliance on the extent of Gunther's monetary success in this litigation" when calculating the multiplier. "On this record, we see no likelihood the trial court

18

would have exercised its discretion differently in the absence of the error regarding the civil penalties"].)

Taduran's reliance on *Warren*, *supra*, 30 Cal.App.5th 24, and *Graciano*, *supra*, 144 Cal.App.4th 140, to preclude consideration of the amount of monetary recovery is misplaced. Those cases did not involve a representative action. (See *Graciano*, 144 Cal.App.4th at p. 164 ["This was not a representative action, and the underlying rationales expressed in [*Lealao*] are inapplicable"]; *Warren*, *supra*, 30 Cal.App.5th at p. 37 [applying *Graciano* to an action under the Song-Beverly Consumer Warranty Act, Civ. Code § 1790 et seq.].) In sum, the trial court properly considered various relevant factors and reasonably arrived at a negative multiplier. There was no abuse of discretion.

DISPOSITION

The Final Judgment is affirmed. Respondent is entitled to its costs on appeal.

DELANEY, ACTING P. J.

WE CONCUR:

GOODING, J.

SCOTT, J.

19