Filed 1/11/23  CDC San Francisco v. Webcor Construction CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CDC SAN FRANCISCO LLC,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WEBCOR CONSTRUCTION, L.P. et al.,<br><br>        Defendants and Respondents. | A163751<br><br>(San Francisco City and County Super. Ct. No. CGC-17-559707) |

Appellant CDC San Francisco LLC (CDC) challenges the trial court's award of attorney fees to respondents Webcor Construction, L.P. and Obayashi Corporation (Webcor) following CDC's unsuccessful appeal of an adverse judgment in a disgorgement action.  Webcor had sought more than $1.5 million in attorney fees it claimed it incurred in defending against CDC's appeal.  After imposing a 45 percent reduction, the trial court awarded Webcor $855,438.  Despite the reduction, CDC contends the award is excessive, asserting that the court abused its discretion by making an arbitrary "across-the-board cut."  We affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arose from the construction of CDC's InterContinental Hotel San Francisco by Webcor, which was completed in 2009. (*San Francisco CDC LLC v. Webcor Construction L.P. et al.* (2021) 62 Cal.App.5th 266, 272 (*CDC I*).) In 2015, CDC filed a lawsuit against Webcor for alleged defects in the construction of the hotel. (*Id.* at p. 273.) The parties later settled, and the lawsuit was dismissed in August 2017. (*Ibid.*)

In June 2017, CDC filed another lawsuit against Webcor that stated a single claim for disgorgement under Business and Professions Code section 7031, subdivision (b), alleging that Webcor built the hotel while unlicensed. (*CDC I*, *supra*, 62 Cal.App.5th at p. 273.) Webcor demurred. (*Ibid.*) CDC responded by filing a first amended complaint, and Webcor again demurred and moved to strike. The trial court sustained the demurrer with leave to amend. (*Id.* at pp. 273–274.) CDC filed a second amended complaint, leading Webcor to file another demurrer and a motion to strike. The court again sustained the demurrer with leave to amend. (*Id.* at pp. 274–275.) CDC then filed a third amended complaint and Webcor filed a demurrer. The court sustained the demurrer without leave to amend, and later awarded Webcor $231,834 in contractual attorney fees. (*Id.* at pp. 275–276.) In March 2021, we issued our opinion affirming the judgment and the fee award. (*Id.* at pp. 271–272.)

In June 2021, Webcor filed a motion seeking $1,555,342 in attorney fees and costs incurred in defending the appeal.[1] The $1,555,342 figure

---

[1] Attorneys from each of Webcor's three law firms submitted supporting declarations. The declarations included billing statements describing each attorney task performed, the date the task was performed, the time spent on the task, the attorney who performed the task, the attorney's hourly rate, and

2

included $58,230 for approximately 120 hours of work by Webcor's trial counsel, $102,307 for approximately 300 hours of work by Webcor's in-house counsel, and $1,386,033 for approximately 1,290 hours of work by appellate counsel Gibson, Dunn & Crutcher LLP. Webcor's trial counsel charged hourly rates of $310 to $380. Webcor's in-house counsel charged hourly rates of $400 to $575. Gibson, Dunn & Crutcher charged hourly rates of $655 to $1,390.[2]

Webcor argued that it was entitled to the full amount requested because the parties' contract entitled the prevailing party to all of its " 'actual costs and expenses.' " Alternatively, Webcor argued that the fees sought were "fair and reasonable" under the lodestar method and were necessarily incurred "to adequately address each of the numerous issues raised by CDC on appeal." Webcor also suggested the fees were fair because the underlying matter was a " 'bet the company' type lawsuit." In opposing the motion, CDC urged the trial court to deny the motion in its entirety or to "find an alternate method to determine reasonability."

Following a hearing, the trial court issued its order rejecting Webcor's argument that it was entitled to the entirety of its fees under the parties' contract. Instead, the court determined that Civil Code section 1717, subdivision (a), applied, entitling Webcor to its "reasonable attorney's fees" only. After describing the applicable law, the court characterized appellate counsel's hourly rates as "excessive and unreasonable by any measure." Describing the rates as "off the charts," the court observed that "[t]hese are by far the highest rates that this court has ever seen requested (much less

the amount charged for the task, along with the total hours worked by each attorney and the total amounts charged for each attorney.

[2] Gibson, Dunn & Crutcher's billing also included paralegal hours billed at between $460 and $505 per hour.

awarded to) any counsel in any type of case, in innumerable fee applications, and far above those awarded in any reported California law." The court found the rates were, "at a minimum," at least 20 percent above the prevailing market rates for similar services in the Bay Area. The court also observed that the hours for which Webcor was seeking compensation were "grossly inflated." The court pointed out that on appeal Webcor sought "nearly seven times the amount that its trial counsel charged to brief the very same issues and litigate the case in the trial court." The court also rejected Webcor's assertion that the appeal involved " 'bet-the-company' " litigation. Citing to these factors, the court reduced Webcor's "claimed lodestar" by 45 percent, for a total award of $855,438. This appeal followed.

## II.

## DISCUSSION

### A.    Applicable Legal Principles

Civil Code section 1717, subdivision (a), provides that in any action on a contract that provides for an award of fees and costs to the prevailing party, "the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees." In ruling on a motion for attorney fees, "[t]he trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles." (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 774.)

Contractual attorney fees in California are ordinarily calculated using the lodestar method. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "Under the lodestar method, attorney fees are calculated by first multiplying the number of hours *reasonably* expended on the litigation by a *reasonable* hourly rate of compensation." (*Chacon v. Litke* (2010) 181 Cal.App.4th 1234, 1259, italics added.) Once the trial court has fixed the

4

lodestar, " 'it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.' " (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489.)  If the court determines that the lodestar amount is excessive, it " 'shall reduce the [Civil Code] section 1717 award so that it is a reasonable figure.' " (*PLCM*, at p. 1096.)

"The abuse of discretion standard governs our review of the trial court's determination of a reasonable attorney fee." (*Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691, 697.)  Under this standard, we presume the attorney fees award is correct, and "[t]he appellant challenging the award 'bear[s] the burden of affirmatively establishing that the trial court abused its discretion.' " (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 954.) " ' "The 'experienced trial judge is the best judge of the value of professional services rendered in [the judge's] court, and while [that] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " ' " (*Ibid.*)

## B.    Analysis

CDC argues that this case requires " 'heightened scrutiny,' " asserting the trial court's order is "arbitrary and unreviewable" on appeal because the trial court failed to properly apply the lodestar method.  It contends the court "should have run the lodestar analysis to completion, rather than just stop[ping] and apply[ing] an overall percentage reduction without explanation."  As its primary authority, CDC relies on *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88 (*Kerkeles*).  That case is distinguishable.

*Kerkeles* addressed attorney fees awarded under 42 United States Code section 1988 (section 1988) in a civil rights case.[3]  The trial court in *Kerkeles* had calculated the lodestar and then made an " 'across the board 50% reduction in the claimed hours billed' " without providing further explanation.  (*Kerkeles*, *supra*, 243 Cal.App.4th at p. 101.)  The appellate court rejected this sweeping cut as inadequately supported.  It noted that federal courts reviewing fees awarded under section 1988 apply " 'heightened scrutiny' " to "percentage cuts to large fee requests."  (*Kerkeles*, at p. 102.)  This level of scrutiny is required because courts " 'must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases [citation] and avoiding a windfall to counsel [citation].  The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.' "  (*Id.* at p. 100.)  Examining several cases, the appellate court concluded that "when imposing a reduction greater than 10 percent, the [lower] court 'must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did.' "  (*Id.* at p. 103.)

The heightened scrutiny used in *Kerkeles* has no application here because the underlying case was not brought under federal law.  (See *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 37, fn. 6 ["*Kerkeles* concerned an award of attorney fees under . . . section 1988 that is subject to the more stringent federal standard requiring . . . courts to ' "provide a reasonably specific explanation for all aspects of a fee determination" ' "].)  In contrast, under California law "the trial court has no sua sponte duty to make

_____

[3] Subdivision (b) of section 1988 permits awards of reasonable attorney fees to persons deprived of their civil rights in violation of 42 United States Code section 1983.  It provides, in pertinent part, "In any action or proceeding to enforce a provision of . . . [section 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

specific factual findings explaining its calculation of the fee award and the appellate courts will infer all findings exist to support the trial court's determination." (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754–755.)

Our courts hold that, absent a party's request, a trial court is not required to provide specific factual findings to support its fee award. When a ruling on attorney fees does not identify the manner in which the court calculated the fee award, "it is incumbent on the party who is dissatisfied with the court's calculation of the number of allowable hours to request specific findings." (*California Common Cause v. Duffy*, *supra*, 200 Cal.App.3d at p. 755.) "California courts have stated a disinclination to review the amount of an award when specific findings were not requested." (*Ibid*.) Instead, "the appellate courts will infer all findings exist to support the trial court's determination." (*Id.* at p. 754; see *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 [although record did not indicate whether trial court employed the lodestar method, appellant's claim that attorney fees award was wrongly calculated must be resolved against him, because appellant failed to request and furnish adequate record of trial court's reasoning].) CDC did not request specific findings at the hearing on Webcor's motion, and we therefore must infer that the trial court made the necessary findings to support its determination.

CDC next asserts that the trial court's 45 percent reduction was arbitrary and "was not based on a legitimate basis for determining a reasonable attorney fee award." In so arguing, CDC relies on *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, 272, which reversed an attorney fee order where the trial court reduced by 70 percent the applicant's

7

total hours billed after finding that 70 percent of the billing entries were flawed. CDC's reliance is misplaced.

In *Mountjoy,* the trial court reduced the total hours claimed by the plaintiffs' attorneys largely because the court found that over 70 percent of the attorneys' billing entries were flawed, for reasons such as excessive time spent on the stated task, duplicative billing, or fees for unreasonable tasks. The appellate court found this reduction arbitrary because "there appear[ed] to be no reasonable basis for the conclusion that the total hours included in the 70 percent-plus time entries that were flawed in one or more ways was even reasonably close to 70 percent of the total time claimed. For example, it [was] possible that the hours included in the flawed time entries amounted to only 50 percent of total hours claimed, in which case the [plaintiffs] would have suffered a 20 percent reduction in compensable hours for hours that were actually included in time entries that were not flawed." (*Mountjoy v. Bank of America, N.A.*, *supra*, 245 Cal.App.4th at pp. 280–281, italics omitted.) Under those circumstances, "[a]n across-the-board reduction in hours claimed based on the percentage of total time entries that were flawed, without respect to the number of hours that were actually included in the flawed entries, [was] not a legitimate basis for determining a reasonable attorney fee award." (*Id.* at p. 282, italics omitted.) *Mountjoy* has no application here, as the trial court's reduction was not directly tied to any perceived discrepancies in the attorneys' billing records.

CDC also asserts that the award must be overturned because it would "result in a windfall nearly 10 times greater than the work actually required." (Emphasis omitted.) CDC arrives at this assertion by noting that Webcor's trial counsel was awarded the equivalent of $77,000 in attorney fees for each round of briefing in three contested demurrers, reasoning that a

8

$77,000 order for appellate fees "would have been reasonable based on the efforts spent on a single round of briefing the same issues for the fourth time." CDC also asserts that the trial court should have reduced by 75 percent the fees claimed by Webcor's appellate attorneys based on the rates Webcor's trial attorney indicated were reasonable for such specialty and locale. We disagree.

The trial court properly rejected CDC's suggestion that the award should be based on the fees charged by trial counsel in litigating the demurrers, correctly observing that "the process of preparing an appellate brief necessarily involves more than simply shoveling words that were already presented in the trial court into an appellate brief." We also note that CDC did not provide the court with either the rates it paid its own counsel on appeal or the amount of time its counsel spent on the appeal. An opposing party's rates and time spent on a case have probative value when contesting a fee award. (See *In re Tobacco Cases I* (2013) 216 Cal.App.4th 570, 584.)

CDC next argues that the trial court erred in failing to determine the reasonable hours billed by Webcor. CDC notes the court explained that "Webcor's assertion that it needed 11 attorneys to spend over 1,700 hours to achieve the result that it did is unreasonable on its face, and reflects a great deal of inefficiency, overstaffing, and duplication of effort." The court also referenced the attorney fees that were previously awarded to trial counsel, observing the disconnect presented by Webcor's assertion that "on those basically bare legal issues, it somehow takes one-and-a-half million dollars, more than seven times that amount, to file two briefs in the Court of Appeal." While the court did not state how many hours would have been reasonable, it was not asked to provide a statement of decision. (See, e.g., *Ketchum v.*

9

*Moses*, *supra*, 24 Cal.4th at pp. 1140–1141.) Nor was the court required to "otherwise detail its fealty to the law, which we presume." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323, citing Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) As one appellate court stated after considering a similar argument: "Because the record shows that the court acted for legitimate reasons, we cannot find an abuse of discretion simply because it failed to make its arithmetic transparent." (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1190.)

CDC further complains that the trial court's approach "denies parties any meaningful appellate review of the attorney fee award," again relying on *Kerkeles* and other cases that discuss the federal standard. As we have already explained, that standard does not apply here. In any event, the trial court did explain its reasoning for reducing the requested fees. First, the court stated that it found "excessively high hourly rates on the part of appellate counsel." For example, the court observed that two appellate partners had "staggering" hourly rates near $1,400. The court also made clear its view that Webcor's hours were "grossly inflated," especially considering that "this was hardly an unusually complicated or difficult appeal."

Importantly, CDC does not argue that the award is so high as to shock the conscience, and we do not find that the award meets that standard. It is established that "[t]he only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th

10

1127, 1134; see *In re Tobacco Cases I, supra*, 216 Cal.App.4th at p. 578 ["We are required to uphold a reasonable ruling even if we might not have ruled the same way and a contrary ruling would also be sustainable"]; see also *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 993 ["If the court's ruling is correct on *any* legal theory, the judgment will be affirmed"].)

"Trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the professional services rendered in their courts." (*Ellis v. Toshiba America Information Systems, Inc.* (2013) 218 Cal.App.4th 853, 882.) Here, "[t]he award granted was significantly reduced from the original request as a result of the trial court's indication that it did not look favorably on the full request. Thus, it clearly appears that the trial court exercised its discretion. In these circumstances, we cannot conclude that the award of attorney fees shocks the conscience or suggests that passion and prejudice had a part in it. As such, we conclude that the trial court did not abuse its discretion in awarding the attorney fees that it did." (*Akins v. Enterprise Rent-A-Car Co., supra*, 79 Cal.App.4th at p. 1134.)

In sum, we find no reason to disturb the trial court's ruling.

## III.

## DISPOSTION

The order awarding attorney fees to Webcor is affirmed. Webcor is to recover its costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Margulies, J.


_____
Banke, J.


_CDC San Francisco LLC v. Webcor Construction, L.P._  A163751