Filed 5/30/25

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| MICHAEL CASH, | B336980 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC718190) |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from post-judgment orders of the Superior Court of Los Angeles County, Lia Martin, Judge.  Affirmed.

Haney & Shah, Steven H. Haney, George M. Hill, and Natalie M. Contreras for Plaintiff and Appellant.

---

\*      Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication as to all parts except Part II of the Discussion.  The concurring and dissenting opinion is certified for publication in full.

Sheppard, Mullin, Richter & Hampton, Ronda D. Jamgotchian, Michael T. Campbell, and Daniel J. Ganz for Defendant and Respondent.

\* \* \* \* \* \*

The trial court reduced the attorney fee award for a prevailing plaintiff by an "across-the-board" 30-percent cut based on "unreasonable padding," "duplicative" work, and unnecessary work by the plaintiff's attorneys.  Are such findings, without more, sufficient to uphold a percentage reduction to a fee award?  Historically, yes.  Until recently, appellate courts in California uniformly "review[ed] attorney fee awards on an abuse of discretion standard" (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*)), and would infer findings and defer to a trial court's "general observation that an attorney overlitigated a case" or otherwise overcharged for fees (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 744; *California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 754-755 (*Duffy*)).  Recently, however, a handful of California courts have employed "heightened scrutiny"—imported from federal cases interpreting a federal civil rights statute (namely, 42 U.S.C. § 1988)—and on that basis have demanded that a trial court articulate "case-specific reasons for [any] percentage reduction," including a "clear[]" "expla[nation of] its reasons for choosing the *particular* negative multiplier [or percentage] that it chose."  (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 37, 41 (*Warren*); *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 921 (*Snoeck*); see *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88, 101-104 (*Kerkeles*))  Other courts have declined to employ this importation

2

of federal law (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 37 & fn. 6 (*Morris*)), and we join them in doing so. Importing the federal standard exceeds the federal courts' rationale for employing heightened scrutiny of specific fee awards and is inconsistent with our State's longstanding policy that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in [their] court.'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49 (*Serrano*).) We accordingly affirm the reduced attorney fee award for the plaintiff in this case and, in the unpublished portion of this opinion, also affirm the trial court's denial of a motion to tax the plaintiff's costs.

## FACTS AND PROCEDURAL BACKGROUND

### I. Jury Verdict

In 2017, Michael Cash (plaintiff) worked as a captain in the Los Angeles County Fire Department (the Department) and also served as a training captain for the Department's training academies. When plaintiff complained to the Department's battalion chief of training that the chief should have terminated a female recruit for failing a test that ordinarily results in automatic termination from a training academy, plaintiff was removed as a training captain in future academies.

Plaintiff thereafter sued the County of Los Angeles (the County), alleging that his removal constituted (1) retaliation for reporting gender discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.), (2) a failure to take reasonable steps to prevent such

3

retaliation in violation of FEHA, and (3) retaliation for whistleblowing in violation of Labor Code section 1102.5.[1]

The matter proceeded to a 20-day jury trial in the spring of 2023. The jury found for plaintiff on all three claims and awarded him $450,000.

The County filed a motion for judgment notwithstanding the verdict (JNOV) or, alternatively, for a new trial. After a round of briefing, which included an opposition from plaintiff that included 28 exhibits encompassing 385 pages, the trial court denied the motion.

## II.     Requests for Attorney Fees and Costs

### A.     *Attorney fees*

In August 2023, plaintiff filed a motion requesting $705,730 in attorney fees. In support of that motion, plaintiff's attorney declared that the law firm's hourly rates were (1) $600 for partners, (2) $400 for associates, and (3) $150 for paralegals; however, the invoices submitted in support of the $705,730 total reflected a higher hourly rate of $500 for associates and $200 for paralegals. In October 2023, plaintiff filed a supplemental request, seeking an additional $29,580 in attorney fees related to (1) additional hours opposing the County's post-trial motions, (2) filing the motion for attorney fees, and (3) opposing the County's motion to tax costs. This brought plaintiff's request to a total of $735,310.

The County opposed the motion and the supplemental request. As pertinent here, it asked the trial court to reduce the lodestar to reflect the lower hourly rates set forth in plaintiff's

---

[1]     Plaintiff also alleged the Labor Code-based retaliation claim against the battalion chief, but the trial court dismissed that claim on demurrer.

attorney's declaration. The County also asked that the award be reduced by at least 30 percent due to excessive and duplicative billing, citing as examples that (1) certain associates billed multiple hours for very short notice letters and boilerplate ex parte applications, (2) the three highest-billing attorneys were heavily involved in the litigation when attorneys with lower billable rates could have performed the more routine tasks, and (3) the attorneys otherwise billed excessive amounts of time, including 243 hours opposing a summary judgment motion, 153 hours opposing the JNOV motion, and 28 hours litigating motions to compel that plaintiff later withdrew.[2]

Following receipt of plaintiff's reply in which plaintiff reiterated his request for the original amount of fees without mentioning the supplemental request, and following a hearing, the trial court awarded plaintiff $455,546 in attorney fees. The court started from plaintiff's originally proffered lodestar of $705,730, declining to include plaintiff's supplemental request in the lodestar calculation. From that amount, the court deducted $54,950 to reflect the lower billing rates for associates and paralegals set forth in plaintiff's attorney's declaration. The court deducted a further $195,234—that is, an "across-the-board percentage cut" of 30 percent from the adjusted $650,780

---

2     The County also sought an additional 15 percent reduction and a further 10 percent reduction due to plaintiff's limited success in motion practice and plaintiff's attorneys' lack of civility, respectively. Although there was certainly a factual basis for the lack of civility—insofar as plaintiff's lead attorney told the County's counsel that he would "kick his ass," accused the County's counsel of having a cognitive problem, and called him "Putin Jr."—the trial court declined to reduce the fee award on either basis.

lodestar—because the court's "review of the billing records" indicated that "there has been unreasonable padding" because "[s]ome of the work appeared to have been duplicative" and because plaintiff's attorneys unnecessarily prolonged trial with unnecessary prefatory statements during witness questioning. That resulted in the adjusted lodestar fee award of $455,546. The court declined to further reduce the award based on the County's other arguments.

### B. *Costs*

Also in August 2023, plaintiff filed a memorandum of costs seeking $132,445.32. The County moved to tax those costs, challenging several items including $4,300 associated with one of plaintiff's expert witnesses, Donald Lassig (Lassig). Following a hearing, the trial court denied much of the County's motion, but did tax $4,300 in plaintiff's costs associated with Lassig.

## III. Appeal

Plaintiff timely appealed the attorney fees and costs orders.

## DISCUSSION

Plaintiff attacks the trial court's orders reducing his attorney fees and taxing his costs.

## I. Award of Attorney Fees

### A. *The law governing reductions of attorney fee awards*

Although, as a general rule, parties in litigation pay their own attorney fees (*Laffitte*, *supra*, 1 Cal.5th at p. 488), our Legislature has created several statutory exceptions to this rule (see Code Civ. Proc., § 1033.5, subd. (a)(10)(B) [fees recoverable when authorized by statute]). Two are pertinent here. FEHA provides that "the court, in its discretion, may award to the prevailing party [on a FEHA claim] . . . reasonable attorney's fees

. . . ." (Gov. Code, § 12965, subd. (c)(6).) And the Labor Code "authorize[s]" a trial court "to award reasonable attorney's fees" to a plaintiff who prevails on a Labor Code retaliation claim. (Lab. Code, § 1102.5, subd. (j).)

In fixing the amount of fees under these provisions, "the ultimate goal is 'to determine a "reasonable" attorney fee.'" (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985 (*Chavez*).) As the starting point, a trial court must calculate a lodestar figure, which is defined as the time spent representing the party on the issues on which it prevailed multiplied by a "reasonable hourly compensation" for that time. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131-1132 (*Ketchum*); *Serrano*, *supra*, 20 Cal.3d at p. 48, fn. 23.) In fixing the lodestar amount, the trial court may not blindly accept as reasonable the attorney-applicant's reported hours or their hourly rates; to the contrary, the court "must carefully review attorney documentation of hours expended" to avoid "'padding'" (*Ketchum*, at p. 1132) as well as the reasonableness of the proposed hourly rates (*Cordero-Sacks v. Housing Authority of City of Los Angeles* (2011) 200 Cal.App.4th 1267, 1286).

We review a trial court's determination of a reasonable attorney fee award for an abuse of discretion. (*Laffitte*, *supra*, 1 Cal.5th at p. 488.) Historically, this has been a very deferential standard of review, based on the notion that "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in [their] court.'" (*Serrano*, *supra*, 20 Cal.3d at p. 49.) However, in *Warren*, *supra*, 30 Cal.App.5th 24, the court deviated from this well-settled standard of review and held that "an across-the-board percentage" reduction in an award of attorney fees under our State's "lemon law" statute was "'"subject to

7

heightened scrutiny'" on appeal." (*Id.* at p. 37.)  For support, *Warren* cited *Kerkeles*, *supra*, 243 Cal.App.4th 88, a case that applied "'heightened scrutiny'" to a fee award under 42 U.S.C. § 1988, a federal civil rights statute.  (*Kerkeles*, at pp. 99-104.) Although *Kerkeles* explained that the federal cases' heightened standard of review for fee awards under the federal civil rights statute was designed to "'strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases . . . and avoiding a windfall to counsel'" (*id.* at p. 100, quoting *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, 1111), *Warren* decoupled *Kerkeles* from its moorings in applying greater scrutiny to a fee award under California's lemon law statute and invalidating the trial court's 33-percent reduction from the lodestar amount because the trial court did not "clearly explain its case-specific reasons" for "choosing the *particular* negative multiplier that it chose" (*Warren*, at pp. 37, 41).  In *Snoeck*, *supra*, 96 Cal.App.5th 908, the court cited *Warren* in support of applying heightened scrutiny to a fee award in a FEHA discrimination case, and upheld a 20-percent reduction due to overbilling and a 40-percent reduction due to counsel's lack of civility.  (*Snoeck*, at pp. 920-921, 928-929.)  But in *Morris*, *supra*, 41 Cal.App.5th 24, the court rejected *Warren*'s importation of the federal civil rights law to appellate review of fee awards under California law, "disagree[ing that] . . . a heightened standard is appropriate" in reviewing the fee award in that case under our State's lemon law statute.   (*Morris*, at p. 37, fn. 6.)

As between *Warren* and *Snoeck* on the one hand, and *Morris* on the other, we agree with *Morris*.  To begin, the genesis of the heightened scrutiny standard adopted in *Warren* and *Snoeck* is a desire to err on the side of overinclusive fee awards to

8

incentivize lawyers to litigate federal civil rights cases; this rationale does not justify the spread of heightened scrutiny to every fee award for every employment, consumer protection, or other civil case arising in California.  We read *Warren* and *Snoeck* as resting—not, as the dissent suggests, on any "core insight" about the need for greater scrutiny of across-the-board, "meat cleaver"-esque reductions in fee awards—but rather as resting on the policy of encouraging greater fee awards in certain types of cases based on their substantive value.  (*Warren*, *supra*, 30 Cal.App.5th at p. 41 [applying "'heightened scrutiny'" because "consumer law cases" are analogous to "civil rights cases"]; *Snoeck*, *supra*, 96 Cal.App.5th at p. 921 [citing *Warren* for support in applying heightened scrutiny without any further analysis]; cf. *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 150, 160-161 [applying usual scrutiny to an across-the-board negative lodestar in a "proconsumer" case under the Consumer Legal Remedies Act and the Automobile Sales Finance Act].)  Further, this heightened scrutiny, if applied faithfully, would all but eliminate any across-the-board percentage reductions because trial courts would be hard pressed to justify a "particular" percentage—why 30 percent instead of 29 or 31 percent?  Although the dissent disagrees with our concern on the ground that heightened scrutiny would not demand "a perfect correlation" between the trial court's concerns and the percentage reduction "down to the last decimal point," our concern derives from the requirement—set forth in the cases themselves—that the court must justify "the *particular* negative multiplier that it chose" (*Warren*, at p. 41; *Kerkeles*, *supra*, 243 Cal.App.4th at p. 102).  And heightened scrutiny is fundamentally inconsistent with the deference that California

9

courts have granted to trial courts as the percipient witnesses to the quality of representation and hence the amount of fees that representation justifies.

## B. *Analysis*

### 1. *Across-the-board 30-percent reduction*

Plaintiff's chief complaint is the trial court's decision to cut the lodestar figure of his attorney fees by 30 percent.

The trial court did not abuse its discretion in doing so. Under the traditional California standard, across-the-board, percentage-based reductions to a lodestar figure are appropriate so long as the trial court articulates a justifiable reason for the reduction. (*Morris*, *supra*, 41 Cal.App.5th at p. 35, fn. 6.) Here, the trial court imposed the 30-percent reduction due to padding as a result of the attorneys' excessive and duplicative billing. Overstaffing and excessive hours are justifiable reasons (*Id.* at pp. 39-40 [overstaffing]; see also *Kerkeles*, *supra*, 243 Cal.App.4th at p. 101 ["'[c]ases may be overstaffed'" and attorneys "'should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary'"]), and the unusually high number of billed hours, as summarized in the County's opposition, provided substantial evidence of such excess.

Plaintiff resists this conclusion with three arguments. First, he argues that the trial court justified the reduction as accounting for "padding" but then was parsimonious in explaining how there was padding, offering only that plaintiff's attorneys had engaged in "duplicative" billing and unnecessary work, and provided a few examples of the latter. But more specific findings are not required, at least where they were never requested; it is enough for a court to indicate that an attorney overlitigated a case. (*Duffy*, *supra*, 200 Cal.App.3d at p. 754; see

10

also *Snoeck, supra*, 96 Cal.App.5th at p. 921 [noting that a "'reduced award'" may be justified by "'a general observation that an attorney overlitigated a case'"].) Second, plaintiff urges that a result in his favor is dictated by *Mountjoy v. Bank of America, N.A.* (2016) 245 Cal.App.4th 266, and *Vines v. O'Reilly Auto Enterprises,* LLC (2022) 74 Cal.App.5th 174 (*Vines*). But these cases are inapt. To be sure, the appellate courts in *Mountjoy* and *Vines* invalidated across-the-board reductions to the lodestar amounts. (*Mountjoy*, at pp. 280-281; *Vines*, at pp. 185-186.) But the courts did so because the extent of the across-the-board reductions in those cases was arbitrarily keyed to another metric unrelated to the reasonableness of the fees: The trial court in *Mountjoy* effected a 70-percent reduction *in hours* because it found 70 percent of *the entries* (in the fees records) to be flawed, and the trial court in *Vines* effected a 75-percent reduction because it found 75 percent of the plaintiff's claims to be meritless without any consideration of whether the hours spent on those claims overlapped with the hours spent on the plaintiff's successful claim. No such arbitrariness is present here. Third and lastly, plaintiff asserts that the County's JNOV and summary judgment motions were "frivolous" and accuses the trial court of "openly favor[ing]" the County. These assertions are irrelevant to the reasonableness of fees plaintiff incurred in opposing those motions.

        2.     *Error in calculating the lodestar amount*

Plaintiff next challenges the amount of the lodestar, contending that the trial court erred in starting with the lodestar plaintiff originally requested (that is, $705,730) rather than the higher lodestar amount plaintiff sought in his supplemental

11

request (that is, $735,310).[3] As noted above, plaintiff prayed only for the amount of fees originally requested—that is, only $705,730—in his reply memorandum in support of his fee motion. But even if we do treat this lower amount as a typographical error (as plaintiff urged at oral argument on appeal) rather than a retraction of his supplemental request, the trial court still did not abuse its discretion. Although the trial court did not explicitly address the higher amount plaintiff requested in his supplemental request, we are required to infer a finding that the court purposefully rejected the fees plaintiff sought in his supplemental request. (*Duffy*, *supra*, 200 Cal.App.3d at p. 754.) That request sought fees for 23.6 hours opposing the County's post-trial motions as well as preparing for and attending argument on those motions, 14.6 hours opposing the County's motion to tax costs, 3.3 hours preparing the supplemental request, 3.4 hours preparing an ex parte application to advance the hearing on the fees and costs motions, an anticipated 4 hours preparing for the hearing on those motions, and 0.4 hours for a task unrelated to any identified motion. Because plaintiff sought at least 52.4 hours of fees for opposing the County's post-trial

---

[3]  Plaintiff argues for the first time in his reply brief that the trial court abused its discretion in using the lower hourly rates for associates and paralegals set forth in his counsel's declaration instead of the amounts reflected in the bills themselves, claiming that the rates in the declaration were typographical errors. This argument is both waived (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 157-158 [arguments raised for the first time in reply brief are not considered]), and, given the court's broad discretion to set a reasonable fee and to discount plaintiff's 13th-hour claim of a "typo," unpersuasive (*Chavez*, *supra*, 47 Cal.4th at p. 985).

motions in his initial request, the trial court's ruling discounting the original hours sought for those oppositions implies a finding not to award additional fees for those sought in the supplemental request. As to the other fees sought in the supplemental request, a plaintiff can recover "'fees on fees'"—that is, attorney fees incurred in litigating an entitlement to an award of fees. (See, e.g., *Ketchum*, *supra*, 24 Cal.4th at p. 1141; *Serrano v. Unruh* (1982) 32 Cal.3d 621, 639.) But, as with all attorney fee requests, a trial court is not obligated to award the full amount of fees requested. (*Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 625 ["the trial court . . . is not bound by the itemization claimed in the attorney's affidavit"].) Here, the trial court elsewhere articulated its finding that the fees were "padded." As noted above, this finding is supported by substantial evidence. This finding would also justify not awarding "'fees on fees.'" In urging otherwise, plaintiff cites *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1299, but that case merely held that a trial court may award fees incurred litigating post-trial motions, albeit at a discounted amount.

## II.    Taxing of Costs

Under FEHA, the trial court has discretion to award "costs, including expert witness fees," to a prevailing plaintiff in addition to attorney fees. (Gov. Code, § 12965, subd. (c)(6); *Williams v. Chino Valley Independent Fire Dist.* (2015) 61 Cal.4th 97, 105 (*Williams*).) While the statute allows for the recovery of costs that could not normally be recovered (see Code Civ. Proc., § 1033.5, subd. (a)(8) [recovery of expert costs only for "experts ordered by the court"]), it also makes all cost awards to a prevailing FEHA plaintiff discretionary, rather than mandatory (*Williams*, at p. 105; see also *Chaaban v. West Seal, Inc.* (2012)

13

203 Cal.App.4th 49, 57 [costs may be awarded for nontestifying expert who assisted with trial preparation]). Thus, our review is for an abuse of discretion.

The trial court did not abuse its discretion in taxing plaintiff's costs associated with his expert, Lassig. Prior to trial, plaintiff designated Lassig as an expert on the firefighters' union and the Department's policies and customs, as well as to offer opinions on the credibility of other witnesses and whether the Department retaliated against plaintiff. Prior to trial, the court precluded Lassig from testifying about the credibility of other witnesses or offering an opinion on whether retaliation occurred. Thus, at trial, Lassig's testimony was confined largely to his own experience with the union and chain-of-command policies. Plaintiff proffered no evidence as to how Lassig helped his counsel prepare for trial. Because substantial evidence supports a finding that the costs associated with Lassig did not assist plaintiff at trial or in preparing for trial, the court did not abuse its discretion in taxing those costs.

Plaintiff resists this conclusion with three arguments. First, he argues that a court can refuse costs only if such an award would be "unjust" (*Williams*, *supra*, 61 Cal.4th at p. 115), and that here, the trial court used an incorrect standard by examining whether Lassig's services were reasonably necessary. Plaintiff is wrong. Whether an award is "unjust" goes to whether to award costs *at all*; a trial court still evaluates the reasonableness of those costs. (Accord, *Vines*, *supra*, 74 Cal.App.5th at p. 182.) Second, plaintiff cites *Evers v. Cornelson* (1984) 163 Cal.App.3d 310, 317-318, but *Evers* merely held that a court did not abuse its discretion in awarding costs for an expert; *Evers* does not obligate trial courts to award costs for every

14

expert. Third and lastly, plaintiff contends that Lassig's testimony was useful and helpful to counsel in preparing for trial. Because the contrary conclusion reached by the trial court is supported by substantial evidence, we will not reweigh the evidence. (*City of Crescent City v. Reddy* (2017) 9 Cal.App.5th 458, 466 [when reviewing subsidiary factual findings for substantial evidence, appellate court "may not reweigh the evidence"].)

## DISPOSITION

The post-judgment orders are affirmed. The County is entitled to its costs on appeal.

## CERTIFIED FOR PARTIAL PUBLICATION.

_____, P.J.

HOFFSTADT

I concur:

_____, J.

KIM (D.)

15

Michael Cash v. County of Los Angeles
B336980


BAKER, J., Concurring in Part and Dissenting in Part



The opinion for the court adequately frames the split in Court of Appeal authority that marks this case as a good candidate for a grant of Supreme Court review. It does not, however, make plain the stakes of the dispute for civil rights plaintiffs, consumer advocates, and public interest litigants. As one Court of Appeal has explained in a different context, a trial court evaluating a requested amount of statutorily authorized attorney fees should not be permitted to simply "'thr[o]w up its hands'" and accept an opposing party's suggested across-the-board percentage cut to the amount requested without giving a meaningful explanation for adopting this sort of blunt and often severe reduction. (*Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88, 102.) As I will explain, the record suggests the trial court here took just such a throw up your hands approach, and if the majority has its way, more and more trial courts will follow.

I

Plaintiff and appellant Michael Cash (Cash) prevailed at a 20-day trial held after five years of litigation against the County of Los Angeles (the County). The subject of the litigation is important for our purposes only because it involves Fair

Employment and Housing Act and Labor Code claims that made him eligible for an award of attorney fees as the prevailing party.

Cash ultimately requested $735,310 in attorney fees for prevailing in the litigation against the County. Submitted with his requests for attorney fees were declarations and 102 pages of accompanying billing statements identifying the hours of work done in the litigation and the hourly rates for the attorneys and paralegals involved.

The County filed an opposition to Cash's request for attorney fees that conceded some amount of fees should be awarded but argued the amount requested by Cash was "exorbitant." The County challenged the hourly rates reflected in Cash's billing statements as excessive, but the main thrust of the opposition was the claim that many of the hours of work claimed by Cash's attorneys and paralegals were "inefficient," "unnecessary[,] or duplicative."

The County calculated that the billing statements submitted by Cash reflected a total of 1,358.6 hours of work on the case over the roughly five years of litigation (770.1 hours by partners, 510.5 hours by associates, and 78 hours by paralegals). In arguing these hours were "inflated" and in some cases "outrageous," the County did not itemize all time entries on the billing statements that it believed were improper. Instead, it selected examples of what it contended was duplicative or unnecessary work, or work done by a more senior attorney that the County believed should have been done by a more junior attorney or paralegal, and argued for a more blunderbuss remedy. The County argued that "[b]ecause [Cash]'s attorneys' inefficient tactics are a clear effort to pad the bills, in addition to reducing specific time entries as discussed herein, a negative

2

multiplier should be applied to the fee award overall, and a 30% reduction in the award is justified on this basis alone."

Before a hearing to consider the amount of attorney fees to award, the trial court issued a tentative ruling adopting wholesale the County's across-the-board 30 percent reduction. The tentative ruling found the hourly rates reflected in the declaration of counsel submitted with the requests for attorney fees to be reasonable. But the tentative ruling cited *Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24 and *Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24 for the proposition that a court may make across-the-board percentage cuts in either the number of hours claimed or a final lodestar figure when a voluminous fee application is involved. The tentative ruling justified applying this kind of cut to the amount Cash requested in (just) these four sentences: "Upon review of the billing records, the Court agrees that there has been unreasonable padding. Some of the work appeared to have been duplicative. The Court also notes that the length of the trial would have been shortened had counsel for [Cash] refrained from re-stating the same prefatory statement repeatedly before asking the question. Additionally, counsel for [Cash] repeated witnesses' answers to the prior question before asking another question, in violation of *Los Angeles County Court Rules* rule 3.112."

At the hearing on Cash's attorney fees request, the court heard brief argument from both sides on its tentative ruling, asked no questions and made no comments on the merits, and adopted its tentative ruling as the final ruling of the court.

3

## II

The trial court cited both *Morris* and *Warren*, and the court was right that both cases say a court confronted with a voluminous attorney fees motion is allowed to make an across-the-board reduction. I have no quarrel with that proposition. But, as the majority today describes, the cases take significantly different approaches to what a trial court must do to *justify* administering the strong medicine of an across-the-board reduction in fees, which effectively functions as a negative multiplier. As I proceed to explain, *Warren* has the better view of how an across-the-board cut must be justified, but the "heightened scrutiny" label used in that opinion is subject to being misconstrued to overstate what is going on doctrinally. Labels aside, the core insight animating the results in cases like *Warren, supra,* 30 Cal.App.5th 24 and *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908 is easily explained and quite sensible: if a court is going to take a meat cleaver rather than a slicing knife to an attorney fees request in a case where the Legislature has authorized recovery of fees for good public policy reasons, the court should have a correspondingly greater obligation to justify its choice of that blunt tool and thereby enable meaningful appellate review of its award.[1]

---

[1] My view is limited to the situation presented here, where a fee request is supported by detailed billing statements unchallenged as to form. Where a fee request is instead unsupported by billing statements at all (see, e.g., *Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 263 ["unlike some other jurisdictions, California law does not require detailed billing records to support a fee award"]), or where billing statements suffer from improper block

4

1

The ordinary rules a court must follow when evaluating the amount of attorney fees to award pursuant to statutory authorization are, at a high level of generality, settled. "[T]he trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various relevant factors into account." (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 985; *Serrano v. Priest* (1977) 20 Cal.3d 25, 48, fn. 23 ["'The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts'"].)

The parties, however, have cited no case in which our Supreme Court has considered the propriety of an across-the-board reduction to the number of hours billed by an attorney or application of a negative multiplier to a lodestar amount (although the Court has identified the factors a trial court should consider when considering multipliers more generally (*Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 489; *Press v.*

billing or other significant deficiencies, trial courts have more obvious reason to adopt an across-the-board reduction or negative multiplier and appellate courts have less need and less ability to assess the propriety of that reduction.

*Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 322, fn. 12)).  The courts
of appeal, though, have recognized the practical difficulties
presented by voluminous fee requests and held trial courts
confronting such requests may—in appropriate circumstances—
dispense with a line by line review of billing statements by
adopting an across-the-board reduction in fees.  It is on the
appropriateness of the circumstances that courts differ, i.e., in
describing what a trial court must do, and what this court must
do, when an across-the-board percentage reduction is adopted.

2

Concerned that a busy trial court confronted with a
voluminous fee request will find it hard to resist the
attractiveness of a non-specific, across-the-board reduction to
fees, the *Warren* group of cases says appellate courts should more
carefully scrutinize the propriety of such across-the-board
reductions, which inevitably reduce compensation for billed time
that is undisputedly reasonable.[2]  *Morris* (and now the opinion for
the court today) disagrees with this approach because it reads the
reference to "heightened scrutiny" in *Warren* (*Snoeck* does not use
the term) to import federal court standards for California fee
awards.  (*Morris*, *supra*, 41 Cal.App.5th at 37, fn. 6.)  That is not
how I read the case, however.  The "heightened scrutiny"
terminology does unfortunately call to mind the sort of formalism
seen in the context of equal protection tiers of review, but I read

---

[2]     That is the whole point of an across-the-board percentage
reduction or negative multiplier; it is a gross approximation that
avoids any need to distinguish reasonably expended time from
unreasonably expended time on a task-by-task basis.

*Warren* (and *Snoeck*) to import the common sense *logic* found in federal authority and *Kerkeles* (to wit, strong medicine requires stronger justification) not federal substantive law foreign to California jurisprudence.[3]  Put more concretely, the cases recognize appellate courts that must decide whether there has been an abuse of discretion should look more closely at the justification given for across-the-board fee reductions to make sure the discretionary choice of this inherently imprecise method was made for good reason, rather than just because it is faster and easier.[4]  (See, e.g., *Snoeck*, *supra*, 96 Cal.App.5th at 928

---

[3]     *Kerkeles*, for instance, cites *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, which makes this logic plain: "[T]he district court cut the number of hours by 25 percent, and gave no specific explanation as to which fees it thought were duplicative, or why.  While we don't require the explanation to be elaborate, it must be clear, and this one isn't.  Plaintiff's counsel had already cut her fees by 9 percent, so an additional 25 percent cut would amount to almost one third.  The court has discretion to make such an adjustment, but we cannot sustain a cut that substantial unless the district court articulates its reasoning with more specificity." (*Id.* at 1112.)  My reading of *Warren* and *Snoeck* to import this logic, not substantive federal law, is reinforced by the citations in those opinions to the same California precedent cited by the majority to the effect that an experienced trial judge is the best judge of the value of professional services rendered in the judge's court and the judge's view is subject to review but will not be reversed unless clearly wrong.  (*Warren, supra,* 30 Cal.App.5th at 36; *Snoeck, supra,* 95 Cal.App.5th at 921.)

[4]     The majority in this case also complains that looking more closely at across-the-board cuts "would all but eliminate any across-the-board percentage reductions because trial courts

7

["'when a trial court applies a substantial negative multiplier to a presumptively accurate lodestar attorney fee amount, the court must clearly explain its case-specific reasons for the percentage reduction'" so "a reviewing court can determine if the trial court reduced the fee award for valid reasons"].)

The record in this case shows why this is necessary. So far as I can tell based on the sparse record the trial court made, the court chose its across-the-board remedy for all the wrong reasons.

The County's opposition to Cash's attorney fees request highlighted multiple examples of what it saw as overbilling (e.g., 243 hours of work opposing the County's summary judgment motion), but the County never made any effort to tether, even roughly, its proposed 30 percent across-the-board cut to what it believed would have been a reasonable amount of time to bill. Instead, the County appears to have selected the 30 percent number simply because the court in *Morris*, *supra*, 41 Cal.App.5th 24 opined a 30 percent across-the-board reduction would have been proper in *that* case. (*Id.* at 39-40.)

The trial court nevertheless wholly accepted the County's proposed percentage cut that is based merely on what was

---

would be hard pressed to justify a 'particular' percentage—why 30 percent instead of 29 or 31 percent?" That, however, is straw man analysis. An appellate court's closer look at the justification given for across-the-board cuts is not meant to identify, even were it possible, a perfect correlation between a trial court's concerns with attorney fees billed and a percentage reduction down to the last decimal point. The closer review the cases describe is instead designed to ensure there exists a roughly reasonable fit between the magnitude of a trial court's concerns with fees billed and the choice of an across-the-board reduction remedy.

approved in another published case. The trial court also gave no meaningful explanation of the magnitude of its concerns with the billed amount that would provide some insight into why it believed a 30 percent across-the-board cut (amounting to just over 407 hours, or the equivalent of wiping out the entirety of the amount billed for the 20-day trial in this case still with over 100 cut hours left to spare) was commensurate with those concerns.

Instead, the court said only two things. First, the court said "there has been unreasonable padding" and "[s]ome of" the work done by Cash's attorneys appeared to have been duplicative, but the court gave no clue about its view of *how much*, and I have no confidence the court had in mind any notion of what a 30 percent cut would mean in terms of the overall number of hours expended. Second, the trial court criticized the manner in which Cash's attorneys examined witnesses at trial, but this inspires even *less* confidence in the court's ruling. The criticized manner of examination at trial (repeating witness answers and including unnecessary prefaces to questions) could have added up to only a de minimis amount of time—maybe 15 hours at most if you really push the limits of imagination. That the court called out such a minor concern as its only concrete example of why it believed Cash's attorney fees request was inflated suggests the court wasn't focused on achieving any sort of rough proportionality between its concerns and the size of the cut it ordered. Instead, as I said at the outset, the throwaway explanation given leaves me convinced the court just threw up its hands and accepted the County's bottom line.

Just as telling, the majority's opinion opts not to undertake a defense of the trial court's ruling by itself examining Cash's billing statements and explaining why a 30 percent reduction

9

achieves at least a modicum of proportionality.  Instead, the majority rests solely on what it articulates as a "very deferential" standard of review and says this court must affirm the trial court's 30 percent across-the-board reduction simply because the court included a sentence in its order saying it thought there had been padding.  Respectfully, that cannot be enough.  If all the court below needed to do to justify a substantial across-the-board percentage reduction of its choosing was to incant ""a general observation that an attorney overlitigated a case""" (*ante* at 10-11), we will have reduced appellate review to abdication.

## 3

I agree with the majority's resolution of the challenge to the trial court's ruling on the County's motion to tax Cash's costs.  I respectfully dissent, however, from affirmance of the trial court's attorney fees ruling.  I would remand with directions to redetermine the matter and to provide, if the court again employs an across-the-board percentage reduction, an explanation of the reasons for that reduction that is sufficient to permit meaningful appellate review.

BAKER, J.

10